Good morning, your honors. May it please the court, my name is Terrence Kellogg representing Xin He. It is difficult to pronounce because it's obviously Chinese. She pronounces it both he and her so I appreciate the court's concern here. This is a fairly simple case and that's why my briefs were so incredibly thin. Nonetheless, I think I may have managed to get myself confused in trying to respond to the government's brief and I appreciate the opportunity to be able to clarify the defense position here this morning. She has completed her sentence? She has. She's on a term of supervised release. She's back in Seattle. She's not in attendance today. I advised her of her ability to be here. Her primary concern is the collateral consequences of suffering a felony conviction. Primarily she would like to be able to travel to Canada as well as seek employment without having to disclose the fact that she's a convicted felon. So this remains an important concern for her. We submit that the issue is really best understood and best phrased as a question of statutory construction rather than sufficiency of the evidence and it makes a very critical distinction because what we have been trying to get first the district court to appreciate and now your honors is that the question of the statute, the difference between a felony and misdemeanor conviction under 21 United States Code section 333 is the question of whether or not it was done with the intent to defraud or mislead and although the district court properly recognized that that was the distinction between the misdemeanor conviction and the felony conviction, the court then went beyond inferences from circumstantial evidence and we submit missed the statutory requirement of a nexus between that specific intent and the proffering of a misbranded substance. Perhaps the most clear indication in the record of that is the statement of Judge Peckman in making her findings set forth in the excerpt at page 11 that it would not matter whether Ms. Hough knew that the substance that she was proffering to the state investigator as Botox was identical to what would be obtainable in the United States as genuine Botox or not. What I interpreted that statement of hers to mean, and maybe you can tell me if you disagree, was not that she was saying it wouldn't matter if it was really Botox or not, but it wouldn't matter if it was imitation Botox that was actually identically constituted chemically but yet was not Botox because it wasn't made by the people who make Botox. Your Honor, I don't know what was in the court's mind when that was said. My understanding at the time, and it has always been, that it would not matter whether it was in fact genuine Botox or not. But that's not what she said. She said it wouldn't matter if the chemical composition were the same and that I think is correct. It might matter if it was really genuine Botox that had been manufactured in the U.S., somehow sent over to China, put in a different bottle, and then sent back. That might raise a difficult question. But if it were chemically identical but yet not genuine American-made Botox, then that's a different situation. Actually, it's made in France. If it's made in the U.S., it's under license from France. But I think that you're absolutely correct. She did reference the compounds. But I think that, again, we're talking about two different issues. One is the intent element, whether to defraud or mislead, as opposed to the misbranding element and the fact that... They have to match up. So first you have to decide what was the actual offense conduct and then was her intent to defraud matched up with that or was it intent to defraud in some other way? And we essentially conceded that it was misbranded because the testimony was the fact that there were Chinese characters on the vial itself. And the last page of the supplemental excerpt of the record has a photograph of the exhibits, the three vials with the Chinese characters on them and the word Botox. I think that you're right. And it was that second step that the court made that leap as to what constituted the scienter element. For instance, the court said that the reasonable expectations of an American consumer of medical goods was not met. That is not the proper standard. We submit that what Congress intended was that you focus on what is going on in the mind of the actor in making this proffer of misbranded substances. Well, but it's relevant to materiality. You need materiality to have fraud. So her addressing whether the statement would be material was relevant and isn't an irrelevant statement or a statement that displays some sort of lack of understanding of the situation. I don't know. I totally agree with you. But the question is, what's the statement? What is it that the court relied upon and how much of a connection is there between that statement or that circumstantial evidence and the actual concurrent specific intent required by the statute at the time? In Watkins, at the very conclusion of the case where the government was arguing intent to mislead under the same statutory interpretation, the court made reference to common law application of intent to mislead and rejected the government's contention that knowledge of falsity was sufficient. It's that question that we submit is the very kernel of the essence of why it is that we're asking the court to review the findings of the district court in light of what the statute actually requires and give guidance to all of us as to what Congress intended when they put in that felony enhancing element, whether it was a general nonspecific intent to defraud or mislead or whether there had to be the concurrent actual intent to defraud or mislead as to what the substance was. And we submit that that was what was intended. But let's say it was. How was it not met here? Let's say you're right and it's the second and not the first formulation. Well, it's not met because the court itself went through a list of factors that based the court's finding that it was met, such as the reasonable expectations. And the court was talking about, for instance, buying a was a state investigator, presented at a medical establishment or a recognized medical establishment. There were no recognized medical procedures. Instead, Ms. Hoyle, Investigator Hoyle, presented at Ms. He's home. It was a very informal non-medical office type setting. But it was advertised on the website as being in compliance with CDC requirements and being staffed by a registered nurse. I would agree that that is the very worst part of the defense perspective of the facts of the case is the representation on the website by Ms. He that she was an RN. But in thinking about that, how much of a distinction would that have made? If she was in fact an RN, would it have been a defense? Obviously not. Casting about, it's not any misrepresentation or any statement that's misleading. I submit, as I have consistently, that it needs to be tied into the proffering of the misbranded substance itself and that the inference that the court made from the circumstances that the court discussed don't get us there. I'd like to reserve my additional time. Certainly. Oh, yes. Counselor, I'm curious. Why wasn't this just a straight plea agreement? Here, she agrees to testify, apparently a trial to the court, which is very unusual in a criminal proceeding. Well, yes, and any more, I think it's unusual to even have a trial because of the frequency of plea agreements. But the succinct answer to your question, Your Honor, is that the government was inflexible as to permitting a plea to a misdemeanor. And that's why we essentially went to trial and conceded that. But perhaps, why did she testify? I mean, why did she take the stand? It was her election to do so. Thank you. Thank you. May it please the court and counsel. Good morning, Your Honors. My name is Catherine Worma. I'm an assistant U.S. attorney, and I'm representing the government in this matter. The government believes, as set forth in our brief, that the district court properly interpreted and applied the felonious intent element of the offense of misbranding a drug while held for sale. We believe that having applied that standard correctly, Judge Peckman indicated many facts that go beyond the sufficiency of evidence that were required to meet that standard and uphold her conviction. Could you explain how you see the breadth of the charge in count two? It's a rather broader statute than what you seem to be charging and proving. What do you think would be, what sort of conduct would be legitimately found within the language of what you charged? I think the many aspects of the conduct that were referenced explicitly by Judge Peckman in her finding, and that's at pages 10 and 11 of the excerpt of record, the fact that she knew this substance was going, she was going to inject in the... I mean, what did the government actually charge? Was it, did it encompass only the notion that she said it was bonafide Botox and it really wasn't? Or could it include the fact that she implied that it had its origin in the United States when it really had its origin in China? Or could it include the fact that she had the competence and the legitimacy to inject it when she didn't? Or what exactly do you think is encompassed within the charging document? I think what is encompassed, Your Honor, is the representation that what it is this consumer is going to receive in the United States is the type of drug that is approved for use in the United States, approved by the FDA, meaning it is both safe and efficacious. And the substance she was offering was not, and she knew that it was not, but she created an environment, as Judge Peckman noted, which would lead a consumer to believe that's what it was that she was offering. I guess what we were asking is, here's the charge. Here's what she did. How did they match? Thank you. Well, the charge in terms of the elements, a drug, this was, and as Your Honors may have noted, most of this was essentially stipulated with regard to those elements, except for the felonious intent aspect. And so that was the central issue in the trial. And in terms of proving that felonious intent, we presented the facts, then relied upon by Judge Peckman in her finding that that felonious intent existed. Well, if what was required was that Ms. Hay knew that what she had was not the actual Botox made in France, or wherever it's made, how did you prove that she didn't? In other words, why could it not have been the case that somebody in France took some Botox, sent it to China, poured it out of the bottle for whatever reason, poured it into another bottle that had a Chinese label on it, and she took it back to the U.S. and injected it, but it was really Botox all along. How did she know that that was not the case, or how did you prove she didn't know that that was not the case? Well, I think, Your Honor, in terms of your previous comment, when Mr. Kellogg was here, and Judge Peckman's reference to the fact that she doesn't have to know whether it's chemically identical. Now, how does she even know that it's not really and truly Botox made in France, and poured into a different bottle? Because she herself stated it was made in China. She did? When did she say that? In her cross-examination. Well, where do we see that? No, I didn't notice that. That is, Your Honor. She knew she got it in China, brought it from China, but I'm not sure she said she knew where it was made. And we're talking now about a supplemental excerpt of record. Her testimony is starting at page 235. I'm sorry, you said 235? 235. And maybe I am misrepresenting that. She knew she smuggled it in from China. She admitted she smuggled it in from China. Clearly, she's not the same. She knew she had no authority to give injections in the U.S. But how does she know that it wasn't Botox? How did she know that she was injecting something other than Botox? Well, I don't think, well, one way she might have known, Your Honor, I think would be to look at the, look at what it was she had, the containers and photographs of those items. Right, but she had a bottle that said it was Botox, and it had Chinese characters on it, okay, that might have alerted her to something, but this is a specific intent requirement. So how did she know that it wasn't Botox? Well, again, I think the issue is, did she know it was, whether or not it was Botox approved to be used in the United States, approved to be injected? How does she know that it wasn't? Well, I don't think there was any way for her to have known that, Your Honor, unless she chemically tested them. But I think... Even the chemical test wouldn't have shown anything, would it? Well, I think it would. Ultimately, the Botox that, the fake Botox that she tried to, was ready to inject, was confiscated, was tested in a lab, and it was confirmed that it was not chemically identical to FDA approved Botox. If she had performed that kind of a test, then we clearly would have the kind of specific intent required by the Act. If she had concocted it herself, we clearly would have known that this was not, that she had specific intent to defraud here. But how do we know that she didn't know it was Botox? I don't think we, well, we don't know that, but I don't think it's required for us to know that. What is required? What is required for us to prove under the statute is that she had an intent to defraud or mislead. And we believe she had that intent to defraud or mislead with regard to the fact that what we would expect, reasonably expect in the United States, was a drug that had been approved for use in the United States. But she, now that, you might have that if she had said on her website, I've got genuine U.S. approved Botox. Well, she, there were so many other factors, Your Honor, which she created, which she instigated in order to lull the consumer or the recipient into an expectation that what they would receive from her would be an approved substance. What would be a genuine U.S. approved Botox? Does it have to be each bottle approved in the U.S.? Or do they say if it was made in France and it's really what they make in France, do we approve it? I'm not an expert in the FDA requirements, but I believe there is periodic testing by the FDA and certification of the plant at which it is manufactured. There are a number of requirements with regard to the packaging itself, and that goes to the misbranding. That was actually one of my questions, is whether you think your charge was broad enough to encompass a mislabeling, because it certainly was mislabeled because it had Chinese characters on it and the FDA requires you have labels in English. But I'm not clear on whether your charge was broad enough to encompass that sort of fraud. I believe so, Your Honor, and two responses to that. Agent Burkhart testified at the trial with regard to the labeling requirements and all of the ways in which this particular substance was misbranded. And that testimony is starting at page 100 of the supplemental excerpt of record. Agent Burkhart stated, for example, all the labeling has to be in English. There has to be a contact telephone number. So if there's a problem with the drug, someone can contact the manufacturer and report that. There have to be a variety of things on that label, identification of who the manufacturer is. So is it the specific intent to issue a drug that's been mislabeled? Is that what's required? The specific intent is with regard to misrepresentation of the drug that's being presented for injection or for sale. Okay, but my question is, does that depend, then, on what's inside the bottle? Or is it just enough to know that the outside of the bottle doesn't conform? For the strict liability misdemeanor, it's enough to know that the outside of the bottle doesn't conform. Okay, that's the misdemeanor. Okay, nobody's contesting the misdemeanor. Right. Let me give you an example. She gets genuine Botox, no question, it's genuine Botox, and transfers it to a different bottle. Okay, and then she knows that she's getting something out of a bottle that doesn't conform to FDA requirements. But the contents of the bottle are identical to FDA approved. Has she violated the felony part of the statute? I believe if what she started with, so what she started with was. She's got genuine Botox inside a bottle, but the bottle's the wrong bottle. FDA, that she purchased legally in the United States in legal packaging. It doesn't matter where it comes from. It's lawful FDA approved Botox. You make whatever assumptions you need to. And I would like some technical expertise from the FDA, but I believe that would still be a misdemeanor violation because. Yeah, misdemeanor is fine. That's not contested here. The question is whether it's a felony. Right, and so in response to your question. Yeah, has she violated, does she have specific intent such that she violated the statute? Under those circumstances, I don't think the felony offense would exist. If someone knew they had. So it really is the content of the bottle that we're concerned with, not the labeling on the bottle. The label may indicate what's inside it. And the offense is misbranding a drug for sale. That's very much a part of the, it's the core elements of the offense. So is it a specific intent to sell a misbranded drug? Yes. Okay, then that might cover the example I've just given you because that drug would clearly be misbranded, wouldn't it? If she puts it into a different bottle. To your honor, in terms of, it would be the misdemeanor offense, even if you started with absolutely genuine Botox, legally purchased in the United States by someone who could legally purchase in the United States and transferred it to other packaging. I think technically that still would be the crime, misdemeanor crime. But what does your indictment say? Does it say she. That she misbranded a drug, that she misbranded a drug which is held for sale with the intent to defraud and mislead. That additional felony intent element. If there are no further questions, your honor, thank you. Okay, thank you. I submit that the specific intent is to defraud or mislead, not just to provide a misbranded drug. I recognize that my time does not exist. I would add to. I'll give you a minute. We consumed your, we consumed much of your time, so. I'm not sure I need it. In further response to Judge Fletcher's question about why Ms. Hood elected to testify, it followed the court's denial of the motion to dismiss when the government completed its case. And so that was factored into her decision to take the stand and testify on her own behalf. I appreciate the court's concerns. If there's no further questions of me, I would urge the court to remand with directions that the misdemeanor be entered by the district court and Ms. Hood. I shouldn't assume anything from the nature of the Socratic questioning, however. Oh, I absolutely do not. I know better. And if I thought that I had something of value to add, I certainly would at this time. But I, again, appreciate the court's concerns and efforts. Thank you. Thank you. We thank both counsel for the argument. Case is submitted.
judges: Wilken, Fletcher B. , Bybee